[No. B001225. Second Dist., Div. One. June 28, 1984.]

PHYLLIS WILLIAMS, Individually and as Personal Representative, etc.,
Plaintiff and Appellant, v.
TRANSPORT INDEMNITY COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Hurley, Grassini & Wrinkle and Roland Wrinkle for Plaintiff and Appellant.

Harrington, Foxx, Dubrow & Canter, Dale B. Goldfarb and Mark W. Flory for Defendants and Respondents.

Opinion

SPENCER, P. J.—

INTRODUCTION

Plaintiff Phyllis Williams appeals in her individual capacity and as the personal representative of the estate of her deceased husband, Jackson Williams, from a summary judgment granted in favor of defendants Transport Indemnity Company and Tod Uresse.

STATEMENT OF FACTS

On August 4, 1979, the automobile driven by plaintiff's husband was struck from the rear by a truck owned by Lads Trucking Co., an insured of defendant Transport Indemnity Company. As a result of the collision, Mr. Williams sustained orthopedic and internal injuries.

Mr. Williams made a claim against the defendant insurer, after which defendant paid that portion of the claim relating to Mr. Williams' property damage. However, defendant did not offer to settle Mr. Williams' personal injury claim; in fact, after learning that Mr. Williams was suffering from cancer and a heart condition, defendant ceased negotiations related to the personal injury claim.

On January 5, 1980, upon learning that Mr. Williams was about to be hospitalized for his preexisting conditions, as well as his accident-related injuries, defendant resumed contact with Mr. Williams by offering $2,000 in settlement of Mr. Williams' entire personal injury claim. The offer was made three days prior to Mr. Williams' hospitalization, purportedly on a "take it or leave it" basis; the amount offered was substantially less than Mr. Williams' accident-related medical expenses. Mr. Williams rejected the offer. Thereafter, on January 13, 1980, Mr. Williams died while hospitalized.

Prior to his death, Mr. Williams never initiated any legal action to establish the liability of defendant's insured; neither did his estate initiate any such action after his death. Plaintiff brought suit in the instant proceeding, alleging defendant's violation of Insurance Code section 790.03, subdivision (h), on December 31, 1980, following the expiration of the one-year statute of limitations period applicable to personal injury negligence actions. (Code Civ. Proc., § 340, subd. (3).) Plaintiff made no claim against defendant other than by bringing the instant action.

Plaintiff's first amended complaint, filed April 27, 1981, alleges defendant engaged in unfair claims settlement practices by offering Mr. Williams the pittance of $2,000, to take advantage of his "desperate situation," at a time when the liability of defendant's insured was reasonably clear, in that defendant's insured was cited for excessive speed and defective brakes following the accident which injured Mr. Williams. The first amended complaint further alleges defendant's liability for negligently inflicting emotional distress on plaintiff on the ground defendant knew or should have known such a bad faith settlement offer would cause plaintiff emotional pain and suffering.

## CONTENTS

### I

Plaintiff contends the trial court erred in granting summary judgment, in that the initiation of a legal action which results in a final determination of the insured's liability is not a condition precedent to the maintenance of an action against the insurer for violation of Insurance Code section 790.03, subdivision (h), under the facts of this case.

### II

Plaintiff further contends the trial court erred in granting summary judgment against plaintiff in her individual capacity, for the following reasons:

A. Plaintiff is a proper party to the cause of action alleging defendant's violation of Insurance Code section 790.03, subdivision (h); and

B. Plaintiff's cause of action for the negligent infliction of emotional distress is properly brought, in that she was a foreseeable victim of defendant's conduct to whom defendant owed a duty of care.

### III

Finally, plaintiff asserts the trial court erred in granting summary judgment on the first cause of action, in that Mr. Williams suffered special damages from defendant's violation of Insurance Code section 790.03, subdivision (h), which survive Mr. Williams' death.

## DISCUSSION

Preliminarily, we note that the purpose of a motion for summary judgment is "to penetrate through evasive language and adept pleading and

ascertain the existence or absence of triable issues." (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The court resolves the question of triable issues by examining "support[ing] or oppos[ing] . . . affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice . . . may be taken . . . [which] set forth admissible evidence, . . ." (Code Civ. Proc., § 437c.)

I

Plaintiff contends the trial court erred in granting summary judgment, in that the initiation of a legal action which results in a final determination of the insured's liability is not a condition precedent to the maintenance of an action against the insurer for violation of Insurance Code section 790.03, subdivision (h), under the facts of this case. We cannot agree.

*Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880, 884 [153 Cal.Rptr. 842, 592 P.2d 329] held that a third party claimant may sue an insurer for the violation of the duty imposed by Insurance Code section 790.03, subdivision (h) only after the action between the injured party and the insured has been "concluded." Plaintiff argues that the true thrust of the *Royal Globe* decision is to bar the injured third party from suing both the insurer and the insured in the same suit, rather than to require that the insured's liability be independently established as a condition precedent to suing the insurer. The argument is not novel; it was persuasively rejected in *Nationwide Ins. Co. v. Superior Court* (1982) 128 Cal.App.3d 711, 714 [180 Cal.Rptr. 464].

As *Nationwide* noted, *Royal Globe's* reasoning was not limited to the danger of prejudice inherent in the joint trial of actions against the insured and the insurer; an integral part of the decision reasoned that the defense of the insured might be hindered by discovery aimed at the insurer and damages might best be determined after the conclusion of the action against the insured. *Nationwide* therefore concluded, "In view of its reasoning, the court's language in *Royal Globe* 'until the liability of the insured is first determined' and 'after the conclusion of the action by the third party claimant against the insured' could only have had reference to a final determination and conclusion, a final judgment." (128 Cal.App.3d at p. 714.)

*Rodriguez v. Fireman's Fund Ins. Companies, Inc.* (1983) 142 Cal.App.3d 46, 53 [190 Cal.Rptr. 705] expanded the concept of the "conclusion" of the action against the insured beyond a final judgment to encompass the circumstance where the liability of the insured is admitted expressly

and the action is terminated by "the statutory acceptance of an offer (Code Civ. Proc., § 998) followed by a judgment entered thereafter or an injured plaintiff's motion to dismiss with prejudice . . . ." *Rodriguez* reasoned that the action against the insured was sufficiently "concluded" in these circumstances, in that a dismissal with prejudice based on a settlement of an action operated as a bar to any new action. (*Id.,* at p. 55.) However, *Rodriguez* required that the liability of the insured also be admitted expressly, noting, "Generally, a settlement will not act as an admission of liability of either the insured or the insurer with respect to any other claim arising from the same accident or event. [Citations.]" (*Ibid.*) Hence, the clear thrust of *Rodriguez*—as well as *Nationwide*—is that the liability of the insured must be finally determined before the insurer may be sued for its violation of the duty imposed by Insurance Code section 790.03, subdivision (h). Moreover, this obviously was the intent of *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, both by reference to *Royal Globe's* rationale and to the fact an insurer's obligation to settle a third party claim flows from the insured's contractual right to indemnification from the insurer. (See *Nationwide Ins. Co.* v. *Superior Court, supra,* 128 Cal.App.3d 711, 715.)

Plaintiff nevertheless argues that *Royal Globe* does not require the commencement and final conclusion of an action against the insured prior to the initiation of a suit against the insurer under the facts of the case at bar, in that the lapse of the limitations period as effectively bars any future action against the insured as does a final judgment or dismissal with prejudice following a settlement and the concerns motivating *Royal Globe's* holding consequently have no applicability to the instant suit. However, the latter premise does not necessarily follow logically from the former.

Insurance Code section 790.03 defines "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." The definition contained in subdivision (h) provides in pertinent part: "Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . . . [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Inasmuch as plaintiff's first amended complaint alleges a violation of subdivision (h)(5), plaintiff takes the position that the liability of the insured is not in issue; the only issue in the instant action is whether defendants failed to attempt in good faith to effectuate a prompt and fair settlement of the decedent's claim at a time when liability had become *reasonably* clear. However, the issue of whether, from facts known to defendants, liability had become reasonably clear at a certain time cannot be decided in a vacuum.

■ It is fundamental that an insurance contract is, by nature, an indemnity contract; no enforceable claim accrues against the insurer until the insured's liability is in fact established. (See, e.g., Ins. Code, § 11580, subd. (b)(2); *Mathews Cadillac, Inc.* v. *Phoenix of Hartford Ins. Co.* (1979) 90 Cal.App.3d 393, 397 [153 Cal.Rptr. 267].) Therefore, however well isolated facts may *seem* to indicate a time when liability had become reasonably clear to the insurer, if the insured had no liability in actual fact, the insurer can have breached no duty to settle a third party claim. ■ As a consequence, the essential preliminary inquiry in any action alleging the insurer's violation of Insurance Code section 790.03, subdivision (h)(5) must be whether the insured was liable in actuality for the third party claimant's injury.

It is uncontroverted that the insured's liability has never been determined in a legal proceeding and there are no facts in the record to suggest that either the insured or the insurer expressly admitted liability. Plaintiff intimates that defendants' prompt settlement of the decedent's property damage claim may be deemed an admission of the insured's liability, but as noted, *ante,* a settlement does not act as an admission of liability with respect to any other claim arising from the same incident. (*Rodriguez* v. *Fireman's Fund Ins. Companies, Inc., supra,* 142 Cal.App.3d 46, 55.) Hence, the record contains no admission of the insured's liability. Absent such an admission or a legal determination of liability, the liability of the insured remains in issue and the concerns addressed by *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880 retain vitality. The most fundamental concern addressed by *Royal Globe* involves Evidence Code section 1155, which renders inadmissible evidence that a person was insured against liability for loss caused by a harm at the time that harm occurred. The court in *Royal Globe* recognized that joinder of the actions against the insured and the insurer would violate the spirit and letter of section 1155 by permitting the prejudicial use of evidence of liability insurance in an action against the insured. While the court noted the purpose of section 1155 as protecting the insured from the prejudicial use of such evidence in any action against him or her (*id.,* at p. 891), the potential for prejudice remains alive in any proceeding where the liability of the insured is at issue. Moreover, the court's concerns were not so narrowly limited.

The court expressed concern that "unless the trial against the insurer is postponed until the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer." (23 Cal.3d at p. 892.) Concededly, inasmuch as any action against the insured now is barred by the statute of limitation, there is no danger of hampering, seriously or otherwise, the defense of the insured in the instant situation. However, *Royal Globe* also

noted that "damages suffered by the injured party as a result of the insurer's violation of subdivision[ ] (h)(5) . . . may best be determined after the conclusion of the action by the third party claimant against the insured." (*Ibid.*) The reason for the court's view is obvious. The conclusion of the action against the insured provides some means of assessing the extent of the insured's liability and, hence, the damaging effect of the insurer's violation of its statutory duty.

The instant case provides no background of similar assistance in assessing the effect of the insurer's conduct. Indeed, the posture of the instant matter differs from that criticized in *Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883 [162 Cal.Rptr. 115] only in degree. In *Doser,* the insured *was* sued by a third party for wrongful death, but before trial the plaintiff and defendant agreed to compromise the claim in the amount of $980,000 for a general release, in return for which the defendant insured agreed to assign all claims and causes of action he might have against the insurer on a $100,000 liability insurance policy to the plaintiff. In rejecting plaintiff's argument that the subsequent dismissal of the action met the requirement of *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, the court noted: "We are concerned here not only with the fact of damages being clearly established, but the certainty of the amount thereof as well . . . . [¶] No judge or jury ever considered the facts of the . . . case and came up with an appropriate verdict on which a judgment could be based. No agreement as to damages was ever reached in which a representative of the insurance company participated." (101 Cal.App.3d at p. 892.) This is precisely the state of affairs in the case at bar. While limiting *Doser* to its facts, *Rodriguez* v. *Fireman's Fund Ins. Companies, Inc., supra,* 142 Cal.App.3d 46 was careful to predicate its holding that a statutory compromise and dismissal with prejudice met the requirements of *Royal Globe* on the presence of two factors: (1) The complaint alleged the insurer's express admissions of the insured's liability and (2) the settlement was a compromise between the *insurer* and the injured party. Implicit in that analysis was a recognition that a settlement under those circumstances removed a degree of uncertainty in calculating the amount of damages from the insurer's conduct and absolutely established the insured's liability. The present matter provides no degree of certainty whatsoever on either issue.

We further note that, in extending the concept of when an action is "concluded" in the *Royal Globe* sense to a statutory offer to compromise accompanied by express admissions of liability, the acceptance of which is followed by the entry of a judgment in favor of the insured or a dismissal with prejudice, *Rodriguez* expressed concern with the great "possibility of abuse by insurance companies who might entice a settlement by unfair practices, then seek to hide behind the cloak of that settlement. No one should gain

an advantage from one's own wrong." (142 Cal.App.3d at p. 56.) No such danger of abuse exists in the instant circumstances, where there has been no settlement. The plaintiff's remedy in these circumstances is clear—to use the insured and *establish* liability, then to proceed against the insurer, alleging the violation of Insurance Code section 790.03, subdivision (h).

Plaintiff argues that a suit to establish the insured's liability was impossible or impracticable after Mr. Williams' death by virtue of Probate Code section 573. Section 573 limits those damages which a decedent's personal representative may recover, barring the recovery of damages "for pain, suffering or disfigurement," which damages include those sought for emotional distress. (*Neal* v. *Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 920, fn. 3 [148 Cal.Rptr. 389, 582 P.2d 980].) In other words, section 573 limits a personal representative to the recovery of special damages incurred prior to the decedent's demise. However, plaintiff's argument fails to recognize that a personal injury action brought on a theory of negligence is comprised of special damages as well as general damages. Indeed, plaintiff alleges the decedent sustained such special damages as medical expenses (*Wilcox* v. *Sway* (1945) 69 Cal.App.2d 560, 570, 573 [160 P.2d 154]) and the loss of earnings (see *Lombardi* v. *California St. Ry. Co.* (1899) 124 Cal. 311, 319 [57 P. 66]). Clearly, an action against the insured to establish liability for these damages remained both possible and practicable—particularly in view of plaintiff's position that the medical expenses were considerably greater than the insurer's offer of $2,000.

In sum, we hold: (1) *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880 reasonably has been interpreted as requiring the final determination of an insured's liability as a condition precedent to the maintenance of an action against an insurer for the violation of Insurance Code section 790.03, subdivision (h)(5), and (2) the instant case presents no factual circumstances which raise policy considerations favoring an exception to the foregoing requirement. Inasmuch as plaintiff never obtained a final determination of the insured's liability, plaintiff, in her representative capacity, failed to state a cause of action against defendants for the violation of Insurance Code section 790.03, subdivision (h)(5). It necessarily follows that there were no triable issues of material fact relating to that theory; hence, the trial court properly granted summary judgment against plaintiff, in her representative capacity, on the first cause of action.

## II

Plaintiff further contends the trial court erred in granting summary judgment against plaintiff in her individual capacity, for the following reasons:

A. Plaintiff is a proper party to the cause of action alleging defendant's violation of Insurance Code section 790.03, subdivision (h); and

B. Plaintiff's cause of action for the negligent infliction of emotional distress is properly brought, in that she was a foreseeable victim of defendant's conduct to whom defendant owed a duty of care. We disagree.

*Violation of Insurance Code Section 790.03, Subdivision (h)*

Plaintiff's right as an individual to maintain an action against the insurer for bad faith claims settlement practices in violation of section 790.03, subdivision (h)(5) is dependent upon the presence of a duty owed to her to attempt the good faith settlement of a claim. The duties owed an insured may flow either from the insurance contract itself or from statutes imposing such duties. ■ However, the contractual duty to attempt in good faith to settle a claim, implied in the contract by law as part of the contractual covenant of good faith and fair dealing, is intended to benefit the insured alone; there is no intent to benefit a third party claimant. (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584].) Hence, in the absence of an assignment of the insured's rights, any duty to effectuate the good faith settlement of a claim, owed to a noninsured, must be statutorily imposed. It is undisputed plaintiff is not a party to the insurance contract at issue in the instant case, and there is no question of an assignment.

■ Subdivision (h) of Insurance Code section 790.03 is intended to protect both insureds and claimants from unfair settlement practices. Specifically, subdivision (h)(5) provides that it is an unfair practice not to attempt in good faith the prompt and fair settlement of a claim in which liability is reasonably clear, thereby extending its protection to third party claimants as well as insureds. (*Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, 888.) In other words, subdivision (h)(5) imposes on the insurer a duty owed to third party claimants to attempt in good faith to effectuate the prompt and fair settlement of a just claim. However, plaintiff herself made no claim against the insurer prior to filing the instant suit; only the decedent made such a claim.

Nevertheless, plaintiff relies on *Delos* v. *Farmers Insurance Group* (1979) 93 Cal.App.3d 642 [155 Cal.Rptr. 843] for the proposition that a nonclaimant spouse may maintain an action to recover for his or her emotional distress, in that the impact of the insurer's bad faith conduct toward the claimant spouse on the nonclaimant spouse clearly is foreseeable. *Delos* does say that, but the court predicated its holding on the fact the nonclaimant spouse

in that case also was a named insured to whom the insurer owed a duty. *Delos* does *not* stand for the proposition that an independent duty is owed to a noninsured, nonclaimant spouse. In the absence of any status, either as an insured or as a claimant, which subdivision (h)(5) of Insurance Code section 790.03 is intended to benefit, as harsh as it may appear, plaintiff must be deemed an intermeddler without standing to recover for an insurer's violation of the statute. (Cf. *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d 937, 944.)[1] Moreover, plaintiff's individual action for the violation of Insurance Code section 790.03, subdivision (h)(5), is subject to the same condition precedent governing the action brought on behalf of the decedent; i.e., the liability of the insured must be finally determined prior to commencement of a suit against the insurer. Inasmuch as there has been no final determination of the insured's liability, plaintiff's individual cause of action must fail along with that brought in her representative capacity.

*Negligent Infliction of Emotional Distress*

Relying on *Molien* v. *Kaiser Foundation Hospital* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], plaintiff argues that she may recover for the negligent infliction of emotional distress, in that she is "just as much a 'victim' of the [defendant's] conduct as was the husband in *Molien.*" (Appellant's opening brief, p. 18.) *Molien* permitted the spouse of a negligently diagnosed medical patient to maintain an action in his own right due to the *direct injury* to him from the erroneous diagnosis of syphillis, which the diagnosing physician instructed the patient to communicate to her spouse. (27 Cal.3d at p. 923.) First, by virtue of the instruction to the patient that she inform her spouse of the diagnosis so he could be tested for syphillis, the physician's conduct clearly was *intended* to affect the spouse, thereby confirming his status as a foreseeable victim. Second, as the court noted, "Because the disease is normally transmitted only by sexual relations, it is rational to anticipate that both husband and wife would experience anxiety, suspicion, and hostility when confronted with what they had every reason to believe was reliable medical evidence of a particularly noxious infidelity." (*Ibid.*)

While the facts alleged in the instant case are not analogous to those of *Molien,* they well may be of a similar sensitivity. Plaintiff alleges her husband was suffering from cancer and heart disease, as a result of which he

---

[1] Plaintiff also tenders the somewhat novel argument that she has a right to sue in her individual capacity, in that personal injury damages are considered community property under Civil Code section 4800, subdivision (c). Section 4800 deals with the division of community property in the event of dissolution of the marriage or the legal separation of the parties—a circumstance not present in the instant case. Moreover, subdivision (c) defines "community property personal injury damages" as "all money . . . received or to be received . . . in satisfaction of a judgment . . . ."—a circumstance equally absent.

was about to enter the hospital for what was likely to be his final illness. She further alleges defendants knew these facts and took advantage of the decedent's desperate plight to make a nonnegotiable settlement offer substantially less than the decedent's actual out-of-pocket expenses. Concededly, defendants' conduct may not have been *intended* to affect plaintiff in the same sense the physician's instructions were intended to affect the husband in *Molien*; however, given the nature of plaintiff's allegations—suggesting a highly charged emotional setting as well as extreme physical and psychological vulnerability, all of which was known to defendants—we are unwilling to say as a matter of law that plaintiff was not a foreseeable victim of defendants' conduct. In the circumstances alleged, it is entirely possible plaintiff is within the class of foreseeable victim to whom *Molien* extends a cause of action; at the least, the matter presents a triable issue of material fact.

However, the foregoing conclusion is not dispositive of the matter. Plaintiff's right to maintain an action for *negligent* infliction of emotional distress necessarily must be predicated on the existence of a duty of care and its breach. Inasmuch as defendants owed no independently established duty to plaintiff, that duty must arise as a foreseeable consequence of the duty owed to the decedent. The sole source of defendants' duty of care to the decedent is subdivision (h)(5) of Insurance Code section 790.03. Any action founded upon a breach of the protections of subdivision (h)(5) must be preceded by a final determination of the liability of the insured—no less so when, as here, reliance on the statute is indirect rather than direct. As we have noted before, a duty to settle a third party claim in good faith does not arise unless the insured is liable. Absent the essential prior final determination of the insured's liability, plaintiff's cause of action for the negligent infliction of emotional distress must be barred in concert with the first cause of action.

### III

In view of our holding that plaintiff is barred from maintaining an action as decedent's personal representative for defendants' violation of Insurance Code section 790.03, subdivision (h)(5), plaintiff's final assertion—that the decedent suffered special damages as a result of defendants' conduct, which damages survive his death—is not ripe for consideration.

The judgment is affirmed.

Dunnum, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.

**DALSIMER, J.,** Concurring and Dissenting.—I concur in the majority opinion insofar as it affirms the summary judgment against Phyllis Williams (Mrs. Williams) in her individual capacity, but I respectfully dissent from the affirmance of the summary judgment against Mrs. Williams as the personal representative of the estate of her deceased husband, Jackson Williams.

The purpose of subdivision (h)(5) of section 790.03 of the unfair practices act of the Insurance Code (§ 790 et seq.) is to require that insurance companies attempt in good faith to negotiate *prompt,* fair settlements once liability has become reasonably clear.

Defendants' motion for summary judgment against Mrs. Williams as personal representative of the estate of Jackson Williams should have been denied. Liability became reasonably clear as soon as the insurer received and evaluated a copy of the accident report stating the decedent was rear-ended by the insured who was driving with defective brakes and at an excessive speed. Although liability had become reasonably clear, defendants did not attempt to effectuate a prompt, fair settlement of decedent's personal injury claim. The only settlement offer made to decedent by defendants for decedent's personal injury claim was for an amount less than decedent's special damages. This offer was made just days before decedent's death at a time when decedent urgently needed money to pay for medical treatment.

The phrase "in which liability has become reasonably clear" as used in Insurance Code section 790.03, subdivision (h)(5), was recently construed in *Jackson* v. *State Farm Mutual Auto. Ins. Co.* (1983) 148 Cal.App.3d 1179 [196 Cal.Rptr. 474]. In that case the complaint alleged that the insurer offered $25 in settlement of a claim for loss of a car valued at between $900 and $1,200 at a time when the insurer's investigation revealed that the reasonable value of the car substantially exceeded the amount of the settlement offer. Division Four of this court held that the plaintiff's pleading that the insurer offered $25 in settlement at a time when the insurer had completed sufficient investigation, discovery, and analysis necessary to apprise it that the reasonable value of the plaintiff's claim greatly exceeded that sum was sufficient to allege that the insurer did not attempt a good faith settlement at a time when it had facts from which liability had become reasonably clear. (*Id.,* at p. 1186.) I believe that Division Four's construction of the phrase "in which liability has become reasonably clear" is correct. To hold that an action against the insured must be concluded before liability is reasonably clear would defeat the very purpose of Insurance Code section 790.03, subdivision (h)(5). (Also see *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 888-891 [153 Cal.Rptr. 842, 592 P.2d 329].)

The purpose of *Royal Globe* was to provide for judicial enforcement by third party claimants of the mandate of the Unfair Practices Act (Act). (*Royal Globe Ins. Co. v. Superior Court, supra,* 23 Cal.3d 880, 888.)

In *Royal Globe* the third party claimant had sued the insured for personal injuries and the insurer for violation of the Act in the same lawsuit. Under those circumstances the court held that the third party claimant's lawsuit against the insurer could not be brought until the liability of the insured was first determined. (*Royal Globe Ins. Co. v. Superior Court, supra,* 23 Cal.3d 880, 892.) A primary reason for that holding was that, unless the trial against the insurer was postponed until the conclusion of the lawsuit against the insured, "the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer." (*Id.,* at p. 892.) Since here no action was brought by the injured third party claimant or his estate against the insureds within the limitations period (Code Civ. Proc., § 340, subd. (3)), that rationale has no application. There exists no problem of hampering the defense of the insureds, since the statutory period for filing an action against the insureds had expired before this action was commenced.

Two additional policy reasons were recited by the *Royal Globe* court on the question of the timing of the lawsuit by the claimant against the insurer. First, the court noted that a joint trial against the insured and insurer would violate Evidence Code section 1155, which provides that evidence of insurance is inadmissible to prove negligence or wrongdoing. (*Royal Globe Ins. Co. v. Superior Court, supra,* 23 Cal.3d 880, 891.) Because, due to the expiration of the statute of limitations, the estate cannot bring an action against the insureds, this policy reason also has no application to the estate's right to pursue the remedy recognized by *Royal Globe.*

Second, the *Royal Globe* court stated that "damages suffered by the injured party as a result of the insurer's violation of subdivision[] (h)(5) . . . may *best* be determined after the conclusion of the action by the third party claimant against the insured." (*Royal Globe Ins. Co. v. Superior Court, supra,* 23 Cal.3d 880, 892, italics supplied.) A strong inference of that statement is that the damages suffered by the injured party as a result of such violation may also be determined in the absence of an action by the third party claimant against the insured. Since no action may now be brought against the insureds, no policy reason exists to delay a determination of the damages suffered by the third party claimant as a result of defendants' tortious conduct. None of the reasons mentioned by *Royal Globe* for deferring the action against the insurer requires or even justifies foreclosing such action under the present circumstances.

Nothing in the *Royal Globe* decision indicates any intention to preclude the estate of a third party claimant from suing an insurer for violation of Insurance Code section 790.03, subdivision (h)(5), after the statute of limitations has run on the claimant's causes of action against the insured. While a contrary view was expressed by the court in *Carr* v. *Progressive Casualty Co.* (1984) 152 Cal.App.3d 881 [199 Cal.Rptr. 835], that case is distinguishable because there the third party claimant had initiated a lawsuit against the insured during his lifetime, and judgment was entered after his death. Thus, the *Carr* court was not confronted with the issue now before this court.

In our case the decedent's cause of action against defendants arose no later than January 1980. Defendants breached their duty to promptly, fairly, and equitably settle decedent's claim when they offered him less than his medical specials although they well knew of his severe personal injuries and terminal condition and liability had become reasonably clear.

Section 790.03, being remedial in nature, should be liberally construed. (See *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 480 [58 Cal.Rptr. 249, 426 P.2d 753].) This was recognized by the *Royal Globe* court in its holding that the phrase "with such frequency as to indicate a general business practice" (Ins. Code, § 790.03, subd. (h)) does not apply to an action against the insurer by a third party claimant. (*Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, 891; cf. *Rodriguez* v. *Fireman's Fund Ins. Companies, Inc.* (1983) 142 Cal.App.3d 46, 53 [190 Cal.Rptr. 705].)

Extension of the *Royal Globe* limitation to foreclose an action under the circumstances pleaded in this case would encourage insurers to engage in the very type of conduct alleged—the calculated refusal to negotiate in good faith once it is learned that the claimant is gravely ill. The insurer is well aware of Probate Code section 573, which provides that "When a person having a cause of action dies before judgment, the damages recoverable by the executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death . . . and shall not include damages for pain, suffering or disfigurement." Appellant alleges that defendants, knowing of the fatal nature of decedent's illness and knowing that it was not likely that decedent would survive his impending hospitalization, manifested their intent to take full advantage of decedent's condition to avoid paying the actual settlement value of the claim. Knowing of the effect of Probate Code section 573, defendants intended to avoid paying any amount for decedent's general damages and offered an amount which was even less than the medical specials as a full settlement of the case. It was also because of decedent's impending death and the effect of Probate Code

section 573 that defendants were quite unconcerned with any potential liability to decedent for emotional distress caused by their reprehensible conduct in violating Insurance Code section 790.03, subdivision (h)(5). I cannot believe that the limitation of *Royal Globe* was intended to preclude an action against the insurer for violation of the Act under such outrageous circumstances as are here alleged. The limitation of *Royal Globe* should not be extended to bar an action against the insurer when, due to the death of the third party claimant before the expiration of the limitations period, general damages caused by the accident could not be recovered from the insured. A new cause of action arose in favor of the third party claimant when defendants breached their statutory duty, and that cause of action survived the decedent's death.

This is not a case in which a healthy third party claimant is attempting to sue the insurer under the Act after having allowed the limitations period for bringing an action against the insured to expire. Only five months of the limitations period had expired when decedent died. Since decedent was in extremely poor health and the expiration of the limitations period was not imminent, there was no reason for decedent to commence an action against the insureds. After decedent died, his estate could sue only for the amount of decedent's special damages. (Prob. Code, § 573.) It would not have been economically feasible for the estate to file a complaint against the insureds in municipal court in view of the costs of such litigation in relation to the small amount of the probable recovery. Although the insureds' liability would have been determined in such an action, it was not necessary for the estate to commence an action against the insureds because a clear case of liability existed in view of the accident report described *ante* at page 966.

These circumstances present a compelling exception to the usual situation in which "damages suffered by the injured party as a result of the insurer's violation of subdivision[] (h)(5) . . . may best be determined after the conclusion of the action by the third party claimant against the insured." (*Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, 892.) Where there exists no economic incentive for the estate to first sue the insureds and where damages in such an action would be limited to the decedent's specials, an action against the insureds should not be required before the estate may sue the insurer and its claims adjuster for violation of the Act in the manner alleged in this case. An underlying rationale of the *Royal Globe* limitation is to protect the insured from being prejudiced by a jury's inflated determination of the amount of general damages upon the jury's learning that the defendant has insurance. Where, as here, the maximum damages that could have been obtained in an action against the insureds was limited to the decedent's specials, that rationale does not apply.

I would reverse the judgment against Phyllis Williams as representative of the estate of Jackson Williams.

Appellant's petition for a hearing by the Supreme Court was denied August 22, 1984. Bird, C. J., was of the opinion that the petition should be granted.