[No. B009812. Second Dist., Div. One. Sept. 25, 1985.]

SKIP TAYLOR, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY,
Defendant and Respondent.

## Counsel

Brown & Brown and Bradley A. Raisin for Plaintiff and Appellant.

Hartman, Morton & Schlegel and Richard J. Schlegel for Defendant and Respondent.

## Opinion

### HANSON (Thaxton), J.—

#### Introduction

This is an appeal by plaintiff Skip Taylor (plaintiff and/or Taylor) from the sustaining of demurrer without leave to amend brought by defendant/respondent State Farm Fire and Casualty Company (State Farm) to plaintiff's complaint alleging bad faith on the part of State Farm by appealing the jury's verdict in favor of plaintiff Taylor in an underlying action. We affirm.

#### Facts

On October 9, 1979, Taylor filed a complaint naming as a defendant State Farm seeking damages for State Farm's bad faith failure to settle Taylor's fire damage claim (case No. C300645). State Farm answered the complaint and the matter proceeded to trial. On March 2, 1984, the jury returned its verdict in the sum of $2,576,000 (compensatory damages—$576,000; punitive damages—$2 million) in favor of Taylor and against State Farm. State Farm appealed the verdict. The appeal is still pending.

In the case at bench, Taylor filed a complaint (case No. C502958) alleging that State Farm committed bad faith by appealing the jury's verdict in the

underlying action (case No. C300645), and seeking punitive damages in the sum of $15 million. State Farm demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. On August 13, 1984, the trial court sustained State Farm's demurrer without leave to amend. Plaintiff Taylor appeals.[1]

ISSUE

The sole issue on appeal is whether or not the trial court properly sustained State Farm's demurrer, without leave to amend.

DISCUSSION

█ Plaintiff Taylor's complaint in the instant case (No. C502958) alleging bad faith on the part of State Farm for appealing from the judgment in favor of plaintiff in the underlying case (No. C300645) seeks damages against State Farm pursuant to Insurance Code section 790.03, subdivision (h)(5) which provides that it is an unfair practice for an insurance company to ". . . [fail to attempt] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

In sustaining the demurrer to the complaint for failure to state a cause of action, the trial court's minute order of August 13, 1984 states: "If there is a cause of action on the facts presented, it is clearly premature. The prosecution of this suit would improperly invade the prosecution of the appeal by the defendant. [¶] Plaintiff does not claim to have more to allege, only that the law might expand in his favor in the interim."

We agree with the trial court that, "If there is a cause of action on the facts presented, it is clearly premature."

In *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711 [180 Cal.Rptr. 464], plaintiff Calzada had filed an action for personal injury against one Johnson. Johnson denied liability and cross-complained against Calzada for her own personal injuries. Trial of the personal injury action resulted in a jury verdict in favor of plaintiff Calzada. Johnson appealed from the judgment. While the appeal was still pending, Calzada filed an action against Johnson's automobile liability insurance carrier Nationwide.

---

[1]On appeal, plaintiff Taylor in his brief requests this court to await the state Supreme Court decision in *Coleman* v. *Gulf Insurance Group* (Cal.App.), in which the Supreme Court granted a petition for hearing on May 31, 1984 (argued on October 12, 1984). By this request, plaintiff Taylor tacitly concedes that his bad faith complaint in the instant action is not bottomed on existing statutory or decisional law. We elect not to wait for the Supreme Court decision in *Coleman*.

The action alleged that Nationwide acted in bad faith in not negotiating a settlement of the personal injury action within its policy limits ($25,000) and further engaged in conduct amounting to bad faith for failure to negotiate a settlement in violation of various subdivisions of Insurance Code section 790.03.

Nationwide filed a general demurrer to the complaint and also moved for judgment on the pleadings. The demurrer was overruled and the motion for judgment on the pleadings was not ruled upon. Nationwide filed a petition for writ of mandate.

The Court of Appeal issued a peremptory writ of mandate to compel the superior court to vacate its order overruling the demurrer and to enter new orders sustaining the demurrer and granting the motion for judgment on the pleadings. The Court of Appeal accepted Nationwide's argument that *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] supported the proposition that inasmuch as Calzada had not secured a final judgment against Johnson (an appeal from the judgment was still pending) Calzada has as yet no cause of action against Nationwide.

In reaching its decision, the *Nationwide* court also dismissed an argument by Calzada that the judgment was "final" in the context of Code of Civil Procedure section 904.1 because it was final for the purposes of appeal. The court stated that a final determination of liability in the context of *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, means to a judgment that is final for res judicata purposes and not for purposes of appeal, stating: "The reason is apparent: unless the determination of liability and the amount of damages were finally determined in the res judicata sense, the insurer would not be collaterally estopped by the judgment from relitigating in the third party action facts relating to the question of liability and damages." (*Nationwide Ins. Co.* v. *Superior Court, supra,* 128 Cal.App.3d at p. 715.)

## Conclusion

Inasmuch as the appeal from the underlying action (case No. C300645) is still pending, we affirm the judgment (order) of the trial court in the case at bench (case No. C502958).

Spencer, P. J., and Crahan, J.,* concurred.

**HANSON (Thaxton), J.**—The lead opinion is decided on the narrowest possible grounds as being premature, *if* there is a cause of action. (*Nation-*

---

*Assigned by the Chairperson of the Judicial Council.

*wide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711 [180 Cal.Rptr. 464].) However, in our view, taking into consideration the entire statutory scheme expressed in Insurance Code section 790.03,[1] and established procedure for review, we conclude there is no such cause of action authorized by statutory law or binding decisional law.[2]

A reading of section 790.03 in its entirety indicates that those actions or conduct listed and defined as unfair methods of competition and unfair deceptive acts or practices by insurance companies are spelled out with some specificity.

Here, the only prohibited conduct listed under section 790.03 relied upon in the complaint is contained in subdivision (h)(5) which states: "Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

Relevant by way of analogy to the alleged misconduct of State Farm in the instant case is the prohibited conduct described in subdivision (h)(10) of section 790.03 which states: "Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration."

Black's Law Dictionary (5th ed. 1979) page 96, defines "Arbitration" as follows: "The reference of a dispute to an impartial (third) person chosen by the parties to the dispute who agree in advance to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard. [¶] An arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to established tribunals of justice, and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation."

The state Legislature in subdivision (h)(10) refers to "insureds or claimants" in reference to "appealing from arbitration awards." If the Legislature intended section 790.03, subdivision (h)(5) to apply to insurance com-

---

[1] Unless otherwise indicated, all references are to the Insurance Code.

[2] Although not binding, we are aware of *Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206 [197 Cal.Rptr. 446], where the court reversed an order granting summary judgment against a complaint alleging violation of Insurance Code section 790.03, subdivision (h)(5), by the insurance carrier and an order granting judgment on the pleadings against a complaint alleging a conspiracy to violate Insurance Code section 790.03, subdivision (h)(5), by the insurance carrier's attorneys. In our view, extending liability for postjudgment settlement activities is a task for the Legislature, not the judiciary, for the reasons stated in the body of this concurring opinion.

pany's *posttrial* activities as distinguished from *postarbitration* activities, it would have so stated that in subdivision (h)(5) or (h)(10).

In view of the established rules and procedures for litigating and seeking appellate review of civil actions in California's system of justice, subdivision (h)(5) must reasonably be construed to refer only to *prejudgment* activity on the trial court level.

In the case at bench (No. C502958), in proving up bad faith in the trial court, a critical issue which the trial court would have to necessarily determine is whether or not the appeal filed by State Farm in the underlying action (case No. C300645) was based on totally frivolous (no merit) grounds. Traditionally, the presence or absence of frivolousness of an appeal is determined on the reviewing court level, not the trial court level.

In the event a frivolous appeal is filed, the appellate court is vested with the power to impose proper sanctions which adequately serves as a remedy against such an abuse.

California Courts of Appeal (statewide) are presently conducting voluntary settlement conferences of civil cases (at least one appellate district [the third] has mandatory settlement conferences and another district [the first] is experimenting with mandatory settlement conferences). A basic concept underpinning such settlement conferences on the appellate level is that until a case becomes final it may be subject to disposition by way of settlement. Settlement of civil cases on the Court of Appeal level often takes into consideration such factors as the risk of a reversal by an appellate court, followed by the risk of loss in the event of a retrial, as well as the ever present factors of cost and delay.

Also, relevant here is the privilege aspect of Civil Code section 47, subdivision 2, and its liberal construction so as to allow free access to the courts as expressed in *Umansky* v. *Urquhart* (1978) 84 Cal.App.3d 368, 372 [148 Cal.Rptr. 547]. Furthermore, without elaboration, suffice to say, the cases of *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] and *Rodriguez* v. *Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46 [190 Cal.Rptr. 705] are inapplicable since both *Royal Globe* and *Rodriguez* are not only markedly factually distinguishable but did not consider either section 790.03, subdivision (h)(10) or Civil Code section 47, subdivision 2, as those sections apply to the procedural posture of the case at bench.

Finally, as a practical matter, it would be grossly unfair and totally contrary to established judicial procedures in our adversary system of justice

to arm any plaintiff, who may prevail in a civil action on the trial court level, with the threat of bringing a separate suit against the losing defendant's liability carrier for punitive damages unless the losing defendant gives up the right of appeal and pays off the full trial court judgment in the underlying action. Such a threat should not influence a losing defendant's decision whether or not to exercise a right to appeal.

Moreover, it is apparent that such a scenario is fraught with the potential of opening a Pandora's box of litigation and further overloading the already overloaded trial courts. The realities are that in today's litigious society most defendants in civil suits are represented by counsel furnished by liability insurance carriers. In any event, any reform in this area is a matter constitutionally vested in the state Legislature to address, and, which is also better equipped than the judiciary, to weigh competing interests, assess cost/benefit factors, and to consider down-the-road judicial impact problems.

Crahan, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.