[No. F011331. Fifth Dist. Mar. 23, 1989.]

AMERICAN INTERNATIONAL UNDERWRITERS AGENCY
CORPORATION OF TEXAS, INC., Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
JO HENRY FUENTEZ, Real Party in Interest.

1358

COUNSEL

Schaffer & Lax and Jordon E. Harriman for Petitioner.

No appearance for Respondent.

Young, Wooldridge, Paulden, Self, Farr & Griffin and Philip W. Ganong for Real Party in Interest.

OPINION

**STONE, (W. A.), Acting P. J.**—Petitioner, American International Underwriters Agency, seeks a writ of mandate directing the superior court to vacate an order denying petitioner's motion for summary judgment against real party/plaintiff Jo Henry Fuentez on real party's second amended complaint accusing petitioner and other insurance companies of (1) unfair insurance practices in violation of Insurance Code section 790.03, subdivision (h)(5); and (2) conspiracy to violate Insurance Code section 790.03. Real party brought the action as a third party claimant pursuant to *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329].

In *Royal Globe,* the court held that under Insurance Code section 790.03, subdivisions (h)(5) and (h)(14), a private litigant could bring an action to impose civil liability on an insurer for engaging in unfair claims settlement practices. (23 Cal.3d at pp. 885-888.) The court further held (*id.* at pp. 888-890) that such an action could be brought against the insurer by either the insured or a third party claimant, that is, "an individual who is injured by the alleged negligence of an insured" (*id.* at p. 884). The court ruled that Insurance Code section 790.03 imposed on the insurer a duty owed directly to the third party claimant, separate from the duty owed to the insured. (*Id.* at p. 890.)

PROCEDURAL AND FACTUAL BACKGROUND

On November 4, 1979, during a cementing operation at an oil drilling site, a defective cement head nipple manufactured, owned, and furnished by

the Halliburton Services Company exploded and injured real party. Petitioner insured Halliburton. On October 23, 1980, real party filed suit against Halliburton and Shell Oil Company, alleging negligence of the defendants in maintaining the cementing operation and in supervising the drilling rig and site. Both Halliburton and Shell answered real party's complaint with general denials and with several affirmative allegations, among them negligence on the part of real party and others. On November 22, 1985, real party and Halliburton settled the lawsuit. Real party accepted a lump sum of $150,000 and an annuity contract valued at $145,000. On April 22, 1986, real party signed a "Release of Claims" which, inter alia, provided: ". . . I hereby release and discharge HALLIBURTON SERVICES, INC., their principals, officers and employees of and from any and all claims, demands, actions or causes of action, known or unknown, which I now have or may hereafter have on account of or arising out of an accident which occurred on or about the 5th day of November 1979 at or near Red Bluff, California, on Loffland Brothers' rig No. 34 on Shell Lease Vilche, Well No. 1268, in the County of Tehama, State of California, resulting in that alleged personal injury and other damages. I specifically reserve any and all claims I may have against any other entity not expressly released herein.

". . . . . . . . . . . . . . . . . . .

"It is further understood and agreed that this settlement is a compromise of a disputed claim and that payment of the consideration for this release shall not be deemed or construed as an admission of liability by Halliburton Services, Inc., their principals, officers and employees, by whom liability is expressly denied."

On or about October 31, 1986, real party initiated an action entitled "Jo Henry Fuentez v. American International Underwriters Texas Agency, Inc. et al.," No. 196825. Petitioner filed a motion for summary judgment, contending that *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] barred real party's third party complaint brought pursuant to Insurance Code section 790.03. In that case, the Supreme Court overruled *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, and concluded the Unfair Practices Act (Ins. Code, § 790 et. seq.) may not form the basis for a private right of action against insurers. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at pp. 292, 304.) Although the court announced its holding was to apply prospectively only (*id.* at pp. 292, 305), it nonetheless specified that with respect to pending *Royal Globe* claims, such as the one we now consider: ". . . settlement is an insufficient conclusion of the underlying action: there must

be a conclusive judicial determination of the insured's liability before the third party can succeed in an action against the insurer under section 790.03." (46 Cal.3d at p. 306.) Therefore, according to petitioner, because its insured, Halliburton, settled with real party prior to trial, and because the "Release of Claims" executed by real party acknowledged that the settlement was a compromise of a disputed claim with no admission of liability by Halliburton or its principals, there was no "conclusive judicial determination" of petitioner's insured's liability within the meaning of *Moradi-Shalal,* and any third party *Royal Globe* action by real party was precluded.

Real party contended that Halliburton's liability had been conclusively determined in Wiegel v. Halliburton, a consolidated companion lawsuit to real party's action against Halliburton. At the time real party brought this *Royal Globe* action against petitioner, Wiegel, who sustained serious injury in attempting to rescue real party, had received a jury verdict of $650,000 against Halliburton. Real party argued that Halliburton's liability was established because the operative facts in his case and Wiegel were identical and because special findings numbered one and two in the Wiegel action were findings that Halliburton was negligent and that its negligence was a legal cause of the injury to Wiegel. Real party claimed that the doctrine of collateral estoppel should be asserted against petitioner to preclude it from claiming there had been no "conclusive judicial determination" of its insured's liability in reference to real party's injuries.

When the trial court questioned real party about whether estoppel or waiver should be invoked against him in his unfair insurance practices action in light of his acceptance of the settlement, real party directed the court's attention to the "Release of Claims" executed between him and Halliburton in which real party "release[s] and discharge[s] HALLIBURTON SERVICES, INC., their principals, officers and employees of and from any and all claims, demands, actions or causes of action, known or unknown, which [he] now [has] or may hereafter have on account of or arising out of [the November 5, 1979, accident] resulting in that alleged personal injury and other damages. [Real party] specifically reserve[s] any and all claims [he] may have against any other entity not expressly released herein." Real party represented that the final sentence was included specifically to reserve claims against the insurance carriers.

In rebuttal, petitioner relied on the language in the release which stated that the settlement was a compromise of a disputed claim and payment for the release was not to be deemed an admission of liability by Halliburton or its principals.

The court denied petitioner's motion for summary judgment, citing as a factual question whether real party waived his right or was estopped from instituting the action by the terms of the settlement agreement. In addition, the court noted that petitioner was collaterally estopped to deny the determination of liability that was made by the jury in the Wiegel case.

## DISCUSSION

### *Did the Trial Court Err in Denying Petitioner's Summary Judgment Motion?*

Code of Civil Procedure section 437c provides in relevant part that "[a]ny party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto. . . . [¶] The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **(1)** A writ of mandate is the appropriate method by which a party can request that an appellate court direct a trial court to vacate an order denying a motion for summary judgment and enter judgment granting the motion. (*Roman Catholic Archbishop* v. *Superior Court* (1971) 15 Cal.App.3d 405, 410 [93 Cal.Rptr. 338]; *Burke Concrete Accessories, Inc.* v. *Superior Court* (1970) 8 Cal.App.3d 773, 775 [87 Cal.Rptr. 619].)

 The crux of the issue is whether the trial court correctly determined collateral estoppel can be used to establish the liability of the insured which is a condition precedent to an Insurance Code section 790.03 action according to *Moradi-Shalal.* If the trial court incorrectly determined collateral estoppel can establish the liability prerequisite to a *Royal Globe* action, then *Moradi-Shalal* precludes this lawsuit. Whether or not real party waived the right to bring the action or is estopped from doing so by the terms of the settlement agreement is irrelevant.

 For the collateral estoppel doctrine to apply, there must be an affirmative answer to the following three questions: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 811, 813 [122 P.2d 892].) The present dispute centers around the "issue" question only.

Real party argues: "The jury in the WIEGEL case expressly held HALLIBURTON liable. The plaintiff's case was submitted on the 'rescue

doctrine.' BAJI 4.60 . . . . To be liable, the jury had to actually and necessarily find that the defendant HALLIBURTON negligently created the peril which necessitated the rescue. *Solgaard v. Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 368 [99 Cal.Rptr. 29, 491 P.2d 821]; *Scott v. Texaco, Inc.* (1966) 239 Cal.App.2d 431, 435 [48 Cal.Rptr. 785]. See Comment to BAJI 4.60 7th ed., Vol. I, p. 126.

"The negligence of HALLIBURTON created the injury to and peril of FUENTEZ. Plaintiff, WIEGEL, was injured while attempting to rescue the injured FUENTEZ from further harm. Had the jury concluded that defendant HALLIBURTON' s conduct was not negligent in causing FUENTEZ'S injury, they could not have found defendant HALLIBURTON liable to plaintiff WIEGEL.

"The *issue* of defendant HALLIBURTON's negligence and liability was identical to that tried in the WIEGEL case."

Petitioner responds: "In the *Wiegel* lawsuit, it was *not* necessary for the jury to determine that Fuentez had *actually been injured* to find liability against Halliburton. The jury *only* had to find that Fuentez was *threatened* with injury, and that Wiegel was injured while attempting to rescue Fuentez. Thus, *the Wiegel court made no determination that Fuentez was actually injured by Halliburton*. Therefore, there was no *judicial* determination that Halliburton was liable for the *injuries* of Fuentez. As a result, Real Party In Interest's claim is barred by *Moradi-Shalal,* and the Respondent Court erroneously denied Petitioner's Motion for Summary Judgment." (Original italics.)

As we previously noted, in the Wiegel trial the jury's special verdicts relevant to this action were limited to two issues, (1) that Halliburton was negligent, and (2) that Halliburton's negligence was a legal cause of Wiegel's injury. What the Wiegel jury did *not* determine was (1) whether Halliburton's negligence was the legal or proximate cause of real party Fuentez's injury, (2) whether real party was negligent, (3) whether any other party was negligent, (4) whether any negligence on the part of real party or another was a legal or proximate cause of real party's injury, and (5) the extent of real party's injury. Halliburton's liability rests on the answers to all of these questions. Its liability to real party has not been adjudicated.

*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at pages 305-313, holds unequivocally that an action based upon Insurance Code section 790.03, subdivisions (h)(5) and (h)(14), pending on the date of filing of the *Moradi-Shalal* opinion, may be maintained only if the insured's

liability has been determined. "The insurer is entitled, in good faith, to decline to pay what it considers to be an excessive settlement on a claim of questionable validity. As stated in *Beckham v. Safeco Ins. Co. of America* (9th Cir. 1982) 691 F.2d 898, 903, footnote 3, 'The insurer is not required to settle claims in which liability is reasonably clear, it is simply required to make a good faith attempt to reach a settlement. While liability may be reasonably clear, *damages may not be,* and an insurer is not necessarily required to accept whatever settlement demand is made by the third-party claimant.'

"We conclude that . . . an injured claimant has a right of recovery under *Royal Globe* only upon proof that the insured was actually liable to the third party claimant. If the insured is not liable for the claimant's injury, the claimant has no right to damages from the insured, and the claimant cannot be permitted to recover for 'unfair conduct' by the insurer in refusing to settle an underlying unmeritorious claim.

". . . . . . . . . . . . . . . . . . .

"In *Nationwide Ins. Co. v. Superior Court* (1982) 128 Cal.App.3d 711, 714 [180 Cal.Rptr. 464], Justice Kaufman, citing *Doser,* stated that *Royal Globe* held 'the injured third party may not institute [a section 790.03] action until a judgment establishing the liability of the insured has been secured.' In *Nationwide,* the claimant sued the alleged tortfeasor's insurer after obtaining a judgment against the insured, but during the pendency of the insured's appeal from that judgment. The court held that because the judgment against the insured could be reversed on appeal and the case retried, *Royal Globe's* concerns regarding discovery and determination of damages were 'fully applicable to the case at bench.' (128 Cal.App.3d at p. 714.) It concluded that the *Royal Globe* language about determination of liability and conclusion of the action 'could only have had reference to a final determination and conclusion, a final judgment.' (*Ibid.*)

"Following *Nationwide,* the court in *Williams v. Transport Indemnity Co., supra,* 157 Cal.App.3d 953, stated that a section 790.03 action was 'subject to [a] condition precedent . . . [that] the liability of the insured must be finally determined prior to commencement of a suit against the insurer.' (*Id.,* at p. 964.) In *Heninger v. Foremost Ins. Co., supra,* 175 Cal.App.3d 830, 834, the court, citing *Nationwide* and *Williams,* concluded that 'no viable cause of action can be pled for an alleged violation of [section 790.03, subdivision (h)] until the twin requirements of conclusion of the dispute between the injured party and the insured, *and* final determination

of the insured's liability are alleged.' (Original italics.)" (First italics added.) (46 Cal.3d at pp. 308-309.)

■ Even if real party were to argue that the elements necessary to establish liability had somehow been admitted by the insured, there would be no determination of liability sufficient to support a *Royal Globe* action. *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, also held: "In any event, we have determined that a final judicial determination is required, and that an admission does not suffice to determine the insured's liability." (*Id.* at p. 310.)

Accordingly, real party's *Royal Globe* action is barred. The trial court's denial of petitioner's motion for summary judgment was error.

This court notified the parties it intended to take judicial notice of the pleadings in Fuentez v. Halliburton Services, Inc. (Super. Ct. Kern County, No. 170076). (Evid. Code, §§ 452, 455, subd. (b).) No objection has been lodged, and we take judicial notice of these documents.

Let a writ of mandate issue directing the Superior Court of Kern County to vacate its order denying petitioner's motion for summary judgment in action No. 196825 and to enter an order granting judgment for petitioner. Costs on appeal are awarded to petitioner.

Ardaiz, J., and Brown (G. A.), J.,* concurred.

A petition for a rehearing was denied April 11, 1989.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.